UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PETUR M. SIGURDSSON,

     Plaintiff,

v.                                      Case No: 6:12-cv-920-Orl-TBS

ERNESTO DICARLANTONIO,

     Defendant.

_____

## ORDER[1]

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Doc. 39) and Defendant's Motion to Dismiss (Doc. 40), which the Court will construe as a motion for summary judgment. The Court will **DENY** both motions, but, pursuant to Rule 56(g), will declare certain facts to be undisputed.

### Background

This case is the latest chapter in a three-year-old dispute between two real estate brokers over approximately $10,000. Defendant Ernesto DiCarlantonio was the secretary of Lighthouse Properties of America, Inc. ("Lighthouse"), a closely-held real estate brokerage firm. Beginning in 2006, Plaintiff Petur Sigurdsson provided services to Lighthouse, first as an associate and later as a broker. Differences between the parties led Plaintiff to end the relationship in 2010 to start his own brokerage. Unfortunately, the separation was not an amiable one. Since 2011, Plaintiff has filed three separate lawsuits against either Lighthouse or Defendant. In the first two lawsuits, both filed in

---

[1] On October 3, 2012, the parties consented to the exercise of jurisdiction by a magistrate judge and the case was referred to the undersigned by an Order of Reference on October 9, 2013. (Docs. 29-30).

state court, Plaintiff sued Lighthouse for failing to pay a total of $9,555 in commissions arising from the sale of two properties for which Plaintiff acted as the sales agent. Lighthouse counterclaimed, alleging that Plaintiff owed the company several thousand dollars in unpaid fees. In each case, Plaintiff prevailed and was awarded judgment for the unpaid commissions; however, he has not been able to collect the judgments.

On June 19, 2012, Plaintiff sued Defendant (but not Lighthouse) in this Court, seeking statutory damages pursuant to 26 U.S.C. § 7434. The statute gives a taxpayer a civil remedy against anyone who "willfully files a fraudulent information return with respect to payments purported to be made" to the taxpayer. Plaintiff's complaint alleges that Defendant, on behalf of Lighthouse, fraudulently filed Forms 1099-MISC for the 2010 and 2011 tax years stating that Lighthouse paid Plaintiff commissions when in reality, the commissions were not paid.

On August 22, 2012, Defendant moved to dismiss the case. (Doc. 21). Defendant argued in the motion that Plaintiff had no cause of action against Defendant because Lighthouse, not Defendant, was responsible for paying Plaintiff and filing the Form 1099-MISC. (Id.). Defendant also argued that Plaintiff's allegations of fraud were "not supported by any factual evidence." (Id., p. 3) On September 20, 2012, the district judge denied the motion. (Doc. 26).

On August 7, 2013, Plaintiff filed a Motion for Summary Judgment. (Doc. 39). Plaintiff alleges in his motion that Defendant filed Forms 1009-MISC representing payments of $6,004.38 in 2010 and $4,500.00 in 2011, but that these payments were never made. (Doc. 39, pp. 1-2). To support the factual assertions in the motion, Plaintiff cites a two-page affidavit attached as an exhibit to the motion. (Doc. 39, pp. 3-4).

On August 14, 2013, Defendant filed his "Motion to Dismiss," which requests that the Court "deny Plaintiff's Motion for Summary Judgment and Dismiss Plaintiff's Complaint as a frivolous complaint without evidentiary support and involving an improper party." (Doc. 40, p. 1). The motion cites to several exhibits Defendant filed with his August 22, 2012 Motion to Dismiss (Doc. 21). Defendant argues that he is not responsible for filing the Form 1099-MISC or for making commission payments to Plaintiff and therefore cannot be held liable under § 7434. (Doc. 40, pp. 2-3). Defendant emphasizes that Plaintiff's contract was with Lighthouse and that Defendant owned no shares of Lighthouse. (Id., pp. 3-4). Defendant also points out that Plaintiff has not provided "any evidence proving that the filing of 1099's were done inappropriately or with fraudulent intent as is required as a matter of law." (Id., p. 4). Defendant urges the Court to reject Plaintiff's motion because Plaintiff has not adequately supported the factual assertions in his summary judgment motion as Rule 56(c) requires. Finally, Defendant's motion accuses Plaintiff of violating several rules, including paragraphs (1), (2), and (3) of Rule 11(b) as well as Rule 56(h).[2]

Plaintiff filed a "Reply to Defendants Motion to Dismiss" on September 3. (Doc. 43). The reply accuses Defendant of making false statements in his response concerning his responsibilities as an officer of Lighthouse. (Id., p. 1). Plaintiff argues that Lighthouse was Defendant's alter ego, even though it was formally owned by his mother, and that he had to file this suit because Defendant refused to pay the state-court judgments against Lighthouse. (Id., p. 2). Plaintiff also argues that Defendant was personally responsible for filing the Form 1099-MISC on Lighthouse's behalf, and is therefore subject to liability

---

[2] Defendant filed a separate response to Plaintiff's summary judgment motion on August 27, which repeats the arguments in his Motion to Dismiss. (Doc. 41).

under § 7434.  (Id.).  Finally, Plaintiff states that Defendant has conceded that the Forms 1099-MISC were filed for the 2010 and 2011 tax years, but Plaintiff was not paid the sums indicated on those forms.  (Id.).

On October 1, 2013, the Court held a hearing on these motions and three discovery motions.  (Doc. 55).[3]  At the conclusion of the hearing, the Court directed the parties to file any documents they wanted it to consider before ruling on the pending motions by October 15.  (See Doc. 56).  On October 15, the parties filed approximately 150 pages of documents.  (Docs. 60-63, 64-72).

## Legal Standard

A party is entitled to summary judgment if it can show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56. An issue of fact is "genuine" if the evidence is such that a reasonable jury could find the fact in favor of the nonmoving party and "material" if the fact "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Avenue CLO Fund, Ltd. V. Bank of America, N.A., 723 F.3d 1287, 1294 (11th Cir. 2013).

On a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. Avenue CLO Fund, 723 F.3d at 1294 (citing Blackston v. Shook & Fletcher Insulation Co., 764 F.2d 1480, 1482 (11th Cir. 1985)). But, the Court need not draw inferences based solely on speculation and conjecture. Id. And, the Court "must avoid weighing conflicting evidence or making credibility determinations," Stewart v. Booker T.

---

[3] The Court disposed of the discovery motions in a previous order.  (Doc. 75).

<u>Washington Ins.</u>, 232 F.3d 844, 848 (11th Cir. 2000), as it is the province of the jury and not the judge to assess the probative value of the evidence. <u>Kennett-Murray Corp. v. Bone</u>, 622 F.3d 887, 893 (5th Cir. 1980).

The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists.  <u>Celotex Corp v. Catrett,</u> 477 U.S. 317, 323 (1986); <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991); <u>Watson v. Adecco Employment Servs., Inc.</u>, 252 F.Supp.2d 1347, 1351-52 (M.D. Fla. 2003). The movant may meet this burden in one of two ways: either by directly negating an essential element of the nonmovant's claim or by showing that there is insufficient evidence in the materials on file for the nonmovant to establish its burden of proof at trial. <u>Clark</u>, 929 F.2d at 608. When the moving party demonstrates an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Celotex Corp.</u>, 477 U.S. at 324-35 (internal quotations and citations omitted); <u>Clark</u>, 929 F.2d at 608.  In determining whether a fact is genuinely disputed, the Court may consider evidence not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3).  If a party fails to support an assertion of fact or fails to address another party's assertion of fact, the court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if . . . the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

Rule 56 also gives the Court the power to grant partial summary judgment by entering "an order stating any material fact–including an item of damages or other relief–

that is not genuinely in dispute and treating the fact as established in the case." FED. R. CIV. P. 56(g). Partial summary judgment allows the Court to "'salvage some results from the judicial effort involved in the denial of a motion for summary judgment' and to 'frame and narrow the triable issues if the court finds that such an order would be helpful to the progress of the litigation.'" Lovejoy Electronics, Inc. v. O'Berto, 616 F. Supp. 1464 (N.D. Ill. 1985) (quoting Yale Transport Corp. v. Yellow Truck and Coach Mfg., 3 F.R.D. 440, 441 (S.D.N.Y. 1944); Capitol Records Inc. v. Progress Record Distrib., 106 F.R.D. 25, 29 (N.D. Ill. 1985)).

## Undisputed Facts

Except as otherwise noted, the Court finds that the following facts are not subject to genuine dispute:

1. Lighthouse is an inactive Florida corporation. (Doc. 64-1, p. 2; Tr. 10). Fernanda DiCarlantonio, Defendant's mother, was the sole owner of Lighthouse as well as its president and treasurer. (Doc. 64-1, p. 3; Doc. 64-3; Tr. 9). Defendant was Lighthouse's secretary, but has never been a shareholder or director. (Doc. 64-1, p. 3; Doc. 64-3; Tr. 9). Lighthouse has elected to be taxed under Subchapter S of Chapter 1 of the Internal Revenue Code. (Doc. 64-3). At some point between 2011 and 2013, Lighthouse was administratively dissolved. (Tr. 10).

2. While it was active, Lighthouse was engaged in the real estate brokerage business. Lighthouse was licensed as a real estate corporation, License Number CQ1014378, from May 6, 2002 through September 30, 2012. (Doc. 64-1, p. 1); Florida Department of Business and Professional Regulation, Licensee Details for Lighthouse Properties of America, Inc., available at

https://www.myfloridalicense.com/LicenseDetail.asp?SID=&id=381A4F1984DB8FA890174F7FC14E02B0 (accessed December 6, 2013).

3. From June 2006 through April 2010, Defendant worked as an independent contractor for Lighthouse. (Tr. 10-11). The relationship was governed by an Independent Contractor Agreement ("Agreement") attached as Exhibit "E" to Plaintiff's filing in response to the Court's October 1 Order and Defendant's Exhibit 1 filed in response to the Order. (Doc. 65-1, pp. 17-19; Doc. 60-1, pp. 1-3). The Agreement provided that Defendant would receive 100% of any fee as commission for listings and sales commissions. (Doc. 65-1, p. 18). In return, Defendant agreed to pay monthly fees as outlined in Lighthouse's summary of services sheet, which both parties have appended to the copies of the Agreement filed with the Court. (Doc. 65-1, p. 20; Doc. 60-1, p. 4). The most significant of the monthly fees Lighthouse charged was an office and administrative fee. Initially, this fee was set at $350 and covered support services including a professional office open during regular business hours with a live receptionist and unassigned desk space, access to various office technology (phone system, voicemail, copy machine, fax, high speed internet, MLS computer with printers, etc.), listing and contract sales kits and forms, and a conference room. (Doc. 65-1, p. 21; Doc. 60-1, p. 5; Tr. 12-13). Also appended to each copy of the Agreement is an Amendment executed July 31, 2006. (Doc. 65-1, p. 21; Doc. 60-1, p. 5).

4. Lighthouse also maintained a policy and procedures manual which was provided to all agents and which the agents were expected to follow. (Doc. 77-1). The manual required agents to turn in certain paperwork with respect to

listings and closings.  (Id.).  It provided that, within two business days after Lighthouse notified an agent of any missing documents, the agent must turn in those documents.  (Id., p. 11).  "If the documents requested are not turned in to [Lighthouse], the agent will be automatically charged with a $250.00 late fee for every file missing signed documents, which will be billed and/or deducted from future commissions."  (Id.).

5.  In 2007, Lighthouse transitioned to a "virtual office," which entailed moving its physical office from a commercial premises to Defendant's home in a gated community.  (Doc. 71-1, p. 2; Tr. 13).  Plaintiff contends that he renegotiated (or attempted to renegotiate) his fee with Lighthouse following this transition (Tr. 12).  Defendant contends that the fee remained at $350 per month.  (Tr. 13).  A billing statement and monthly invoices submitted by Plaintiff show that, at least up to April 2009, Lighthouse charged and Plaintiff paid a monthly office fee of $350.  (Doc. 65-1, pp. 3, 11-16; see also Doc. 69-2, pp. 1-2).

6.  The billing records submitted by the parties agree that Plaintiff was current on payments through, but not including, invoice #44, dated September 3, 2009.  (Doc. 65-1, 3-4; Doc. 69-1).  Starting with invoice #44, the invoices and billing statements submitted by the parties are different.  Plaintiff has provided invoices for September and October 2009 and March and April 2010 charging a monthly office fee of $25.  (Doc. 65-1, pp. 7-10).  Defendant has provided invoices for August and September 2009 and January and February 2010 charging a monthly office fee of $350.  (Doc. 69-2, pp. 5-6; Doc. 69-3, pp. 1-2).  The description of the monthly fees in the invoices Defendant submitted contain

in parentheses the notation "Corrected per Independent Contractors Agreement." (Doc. 69-2, pp. 5-6; Doc. 69-3, pp. 1-2).

7.  Plaintiff has submitted two billing statements he alleges he received from Lighthouse. (Tr. 16, Doc. 65-1). The first, dated May 16, 2011, shows entries of $0 for invoices #44, #46, #48, #52, and #54; entries of $25 for invoices #56, #58, #60, and #62; a balance on April 28, 2010 of $75; and a statement balance of $3,170. (Doc. 65-1, p. 3). The second, dated May 31, 2012, shows entries of $325 for invoices #44, #46, #48, and #52; entries of $350 for invoices #54, #56, #58, #60, and #62; a balance on April 28, 2010 of $3,175; and a statement balance of $5,772. (Doc. 65-1, p. 4). Defendant has submitted a billing statement that matches the second one Plaintiff provided. (Doc. 69-1).

8.  In an email Defendant sent to Plaintiff on April 28, 2010, Defendant states that Plaintiff owes an outstanding balance of $75 to Lighthouse. (Doc. 67-1). Lighthouse, proceeding "by and through" Defendant, took the position in state court litigation during 2011 that Plaintiff owed Lighthouse $3,170. (Doc. 71-1, pp. 1, 3). These figures are consistent with the first billing statement Plaintiff submitted, but not the second statement, or the one Defendant provided.

9.  Plaintiff left Lighthouse in April, 2010. (Tr. 10). Shortly before his departure, Defendant sent Plaintiff an email demanding that Plaintiff provide Lighthouse copies of listing paperwork as required by the company policies and procedures. (Doc. 67-1). Plaintiff admitted in state court that these documents were not timely provided to Lighthouse. (Doc. 71-1, p. 4). On June 1, 2010, Lighthouse sent Plaintiff invoice #70, which charged Plaintiff $6,250 in fines for failing to timely submit 27 documents and another $250 for failing to pay an

invoice on time. (Doc. 65-1, p. 6). On June 8, 2010, Plaintiff provided Lighthouse a CD that, according to Plaintiff, contained the demanded documents. (Doc. 67-8, p. 1; Doc. 71-1, p. 4). Defendant maintains that many documents were missing from the CD, and many of those that were on the CD were illegible, or incomplete. (Docs. 67-8; 71-1).

10. Near the end of April, 2010, Plaintiff earned a $4,055 commission from the sale of a property on Lark's Nest Court. (Doc. 65-1, pp. 2-3). Lighthouse did not pay this commission but instead credited it to Plaintiff's billing balance. (Id.). Likewise, in May 2011, when Plaintiff earned a $4,500 commission from the sale of a property on Peterson Place, Lighthouse did not pay the commission but applied it to set off an outstanding balance it maintained that Plaintiff owed. (Id., p. 4).

11. On February 4, 2011, Plaintiff sued Lighthouse in Seminole County Court to recover the $4,055 commission from the Lark's Nest Court sale. (Doc. 72-1). Lighthouse counterclaimed for $3,170, representing the outstanding balance after offsetting the $4,055 commission against the $7,000 in fines Lighthouse claimed Plaintiff owed. (Doc. 71-1, p. 3). On December 22, 2011, the court ruled in Plaintiff's favor on all counts and awarded Plaintiff a judgment of $4,055. (Doc. 71-1).

12. On May 19, 2011, Plaintiff sued Lighthouse in Seminole County Court to recover the $4,500 commission from the Peterson Place sale. Sigurdsson v. Lighthouse Properties, Case No. 2011SC001061 (Seminole Cnty. Ct.).[4] On

---

[4] The docket sheet for this case is available online at http://www.seminoleclerk.org/CivilDocket/case_detail.jsp?CaseNo=2011SC001061

April 22, 2013, the court granted Plaintiff's Motion for Entry of Final Judgment, and on June 13, the court entered judgment for Plaintiff in the amount of $4,850.[5] Id.

13. In the early stages of the first lawsuit, Lighthouse was represented by counsel. (Tr. 18). However, for the majority of both state court cases, including trial, Lighthouse proceeded pro se with Defendant acting on its behalf. (Id.; Doc. 71-1, p. 1).

14. Plaintiff has been unable to collect either judgment. (Tr. 17).

15. Plaintiff earned $6,004.38 in commissions in 2010 and $4,500 in commissions in 2011. (Doc. 1-2, pp. 1, 3; Tr. 3-5).

16. Lighthouse paid Plaintiff $1,949.38 in 2010 and did not pay Plaintiff anything in 2011. (Tr. 5). Instead, Lighthouse applied $4,055 of the 2010 commissions and the $4,500 commission in 2011 to offset the unpaid amounts from the invoices. (Doc. 65-1, p. 4)

17. A Form 1099-MISC for year 2010 is attached as Exhibit "A" to Plaintiff's complaint. The box for Payer's name and address states "Lighthouse Properties of America, Inc." in capital letters at the top, followed by a Casselberry address, phone number, and Defendant's name. The box for Recipient's name contains Plaintiff's name. In Box 7, "Nonemployee compensation," is entered "$6004.38." (Doc. 1-2, p. 1).

18. A Form 1099-MISC for year 2011 is attached as Exhibit "B" to Plaintiff's complaint. The box for Payer's name and address states "Lighthouse Properties of America, Inc." in capital letters at the top, followed by a

---

[5] It is not clear what the additional $350 represents.

Casselberry address.  Defendant's name is in the bottom right.  The box for Recipient's name contains Plaintiff's name.  In Box 7, "Nonemployee compensation," is entered "$4500.00."  (Doc. 1-2, p. 3).

19. Acting in his capacity as an officer for Lighthouse, Defendant submitted the Forms 1099-MISC for 2010 and 2011 to the IRS on Lighthouse's behalf.  (Doc. 1-2, pp. 1, 3; Tr. 35).

## Analysis

The elements Plaintiff must prove to state a claim under § 7434 is a matter of statutory interpretation and thus a question of law which the Court can resolve on summary judgment.  See Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1000, 1504 (11th Cir. 1993); Palmer v. Chamberlin, 191 F.2d 532, 540 (5th Cir. 1951).  In interpreting this statute, the Court "begins where all such inquiries must begin: with the language of the statute itself." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1980).  Section 7434(a) provides:

> If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.

To recover under this statute, Plaintiff must prove: (1) the filing in question was an information return; (2) the defendant filed the return; (3) the return was with respect to payments purported to be made to the plaintiff; (4) the information return was fraudulent; and (5) the defendant filed the fraudulent return willfully.  Plaintiff must prove the last two elements by clear and convincing evidence.  Cavoto v. Hayes, 106 A.F.T.R.2d 2010-5140, 2010 WL 2679973, at *4 (N.D. Ill. July 1, 2010).  The Court will address each element in turn.

A.  The Form 1099-MISCs were "Information Returns"

Section 7434(f) expressly defines "information return" as "any statement described in section 6724(d)(1)(A)."  Section 6724(d)(1)(A)(i) includes "any statement of the amount of payments to another person required by (a) section 6041(a) or (b)" in the definition of "information return."  Section 6041(a), in turn, requires reporting of wages paid to employees and non-employee income paid to independent contractors.  Nonemployee income must be reported in Box 7 of IRS Form 1099-Misc.  The forms in this case are Forms 1099-Misc reporting nonemployee compensation payments "purported to be made to" Plaintiff.  The Court therefore finds that there is no genuine dispute and this element has been established.[6]

B.  Defendant "Filed" the Forms 1099-MISC

Defendant argues that he did not "file" the Forms 1099-MISC within the meaning of § 7434 because they were filed on behalf of Lighthouse.  The Court disagrees. Defendant's proposed interpretation turns the law of agency on its head.  Corporations act through agents, and if a corporation has filed a return, it is because an agent has filed the return on the principal's behalf.  When a principal is liable for an agent's tort by the doctrine of respondeat superior, the agent has necessarily committed a tort.  The agent cannot avoid liability to the plaintiff simply because he acted on the principal's behalf. See Donsco Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978) ("A corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort.").  Thus, for example, if Defendant negligently drove the company car into Plaintiff while taking a client to see a

---

[6] Accord Pitcher v. Waldman, 110 A.F.T.R.2d 2012-6437, 2012 WL 5269060, at *5 (S.D. Ohio Oct. 23, 2012), report and recommendations adopted by 11 A.F.T.R.2d 2013-1128, 2013 WL 866510 (Mar. 7, 2013) (1099-MISCs and W-2s); Byers v. Edina Couriers, LLC, 110 A.F.T.R.2d 2012-5254, 2011 WL 8780388, at *2 (D. Minn. Nov. 17, 2011) (1099-MISCs);

property, Plaintiff could sue Defendant (as well as Lighthouse) for any injuries caused by the accident. This case is no different.

Defendant's proposed interpretation of the statute would represent a significant departure from the common law. "In order to abrogate a common-law principle, [a] statute must 'speak directly' to the question addressed by the common law." <u>United States v. Texas</u>, 507 U.S. 529, 534 (1993). When Congress enacts laws like § 7434 affording individuals civil remedies for fraud (or, for that matter, most any other tort), it does not "write upon a clean slate." <u>Id.</u> In such cases, courts assume that Congress "'has legislated with an expectation that the [common law] principle will apply'" unless a contrary statutory purpose is evident. <u>Id.</u> (quoting <u>Astoria Fed. Savings & Loan Ass'n v. Solimino</u>, 501 U.S. 104, 108 (1991) (alterations in original)). <u>See also</u> <u>Meyer v. Holley</u>, 537 U.S. 280, 285 (2003) ("[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules."). Defendant has pointed to nothing in the text, legislative history, or underlying purposes of § 7434 indicating that a corporate officer who willfully files a fraudulent information return on a corporation's behalf has not "willfully file[d] a fraudulent information return" within the meaning of that section.

Case law interpreting other federal statutes illustrates that corporate officer liability for torts (or criminal offenses) committed in a "representative" capacity is the norm, not the exception. In <u>United States v. Wise</u>, 307 U.S. 405 (1962), the Supreme Court held that corporate officers could be prosecuted criminally for representative acts violating section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Corporate officers who participate in, induce, and approve conduct that infringes a plaintiff's patent may, along with the corporation, be held personally liable to the plaintiff for patent infringement.

Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1579 (Fed. Cir. 1986).

Courts have also imposed liability on corporate officers for violations of the Lanham Act,

see Mead Johnson & Co. v. Baby's Formula Serv., Inc., 402 F.2d 19, 23 (5th Cir. 1968);

the Fair Labor Standards Act, see Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir.

1983) (collecting cases); CERCLA, see United States v. Northeastern Pharm., 810 F.2d

726, 744 (8th Cir. 1986) (collecting cases); and the Food, Drug, and Cosmetic Act, see

United States v. Park, 421 U.S. 658 (1975).

Yet, the only decision addressing the scope of liability under § 7434 construes the

provision narrowly to exclude corporate officers and agents filing returns on the

corporation's behalf. Vandenheede v. Vecchio, 111 A.F.T.R.2d 2013-990, 2013 WL

692876, at *3 (E.D. Mich. Feb. 26, 2013), affirmed on other grounds, __ Fed. Appx. __,

112 A.F.T.R.2d 2013-6309, 2013 WL 5433467 (6th Cir. Oct. 1, 2013). The court in

Vandenheede construed "person [who] files" in § 7434 to mean the same thing as "filer" in

26 C.F.R. § 301.6721-1(g)(6), namely, a person "required to file an information return."

Vandenheede, at *3. That regulation construes a section of the Internal Revenue Code

that imposes civil penalties (but not a private right of action) for filing untimely, inaccurate,

or incomplete information returns. See 26 U.S.C. § 6721. The Vandenheede court

reasoned that, because the two Internal Revenue Code provisions addressed the same

conduct, they should be construed similarly. Vandenheede, at *3.[7]

The Court respectfully disagrees. The IRS, not Congress, defined "filer" in the

regulation, and it expressly limited its definition to § 301.6721-1.  Congress did not use

---

[7] The Sixth Circuit affirmed the District Court's decision in Vandenheede on the grounds that the complaint did not "contain specific allegations supporting a plausible inference that [the defendants] willfully filed false information returns." 2013 WL 5433467, at *3.  Because it affirmed the dismissal on the grounds that the complaint's allegations were insufficient, it declined to consider whether the District Court properly interpreted § 7434. Id. at *2.

- 15 -

the word "filer" in either § 6721 or § 7434. The "presumption that identical words used in different parts of the same act are intended to have the the the same meaning" is hardly "natural" in this context. Atlantic Cleaners & Dyers v. United States, 286 U.S. 427, 433 (1932). Instead, the Court interprets "files" as it typically interprets words not defined in any relevant statutory provision: by giving the term its ordinary meaning. Taniguchi v. Kan Pacific Saipan, Ltd., 132 S. Ct. 1997, 2002 (2012).

The Court is wary of the anomalous results that would stem from the Vandenheede court's construction of § 7434. Under that interpretation, a person who willfully files a form 1099-MISC representing $10,000 of payments to a complete stranger in order to reduce his own tax liability would not be liable to the stranger because the filing was not required. See 26 C.F.R. 1.6041-1(a)(1)(A) (requiring filing of information return only if "salaries, wages, commissions, fees, and other forms of compensation for services rendered" add up to $600 or more). Even if some ambiguity can be found in § 7434 by analogy to an IRS regulation, there is no reason "to interpret an ambiguous statute to reach such an absurd result." Chapman v. United States, 500 U.S. 453, 476 (1991) (Stevens, J., dissenting).

The legislative history of § 7434 confirms the Court's conclusion. The House Report for the Taxpayer Bill of Rights (in which 26 U.S.C. § 7434 was enacted) states that § 7434 was enacted because "[s]ome taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers." H.R. Rep. No. 104-506, at 35 (1996). Fraudulent information returns can cause "personal loss and inconvenience" to taxpayers whether or not a proper return was required. Id. Construing this section narrowly to permit suits only against a payee identified on an

information return would significantly undermine Congress's goal of providing a remedy to taxpayers harmed by fraudulent filings.

Finally, at least one state trial court has expressly held that § 7434 permits claims against agents who file fraudulent information returns on behalf of principals, <u>Sawyer v. Sacca</u>, No. 06-E-025, 2006 WL 4462585 (N.H. Super. Apr. 30, 2007), and at least one district court has allowed claims under § 7434 to proceed against both an entity filing an information return as well as the agent who actually filed the return on the entity's behalf. <u>See</u> <u>Pitcher v. Waldman</u>, 2012 WL 5269060.

Now, the Court holds that a person who willfully files a fraudulent information return is subject to liability under § 7434, whether the person files the return for himself or on behalf of someone else. Because there is no genuine dispute that Defendant filed the returns on Lighthouse's behalf, he has "file[d]" an "information return" within the meaning of the statute.

C.  The Forms 1099-MISC Were "With Respect to Payments" made to Plaintiff

The Court finds that there is no genuine dispute that the Forms 1099-MISC were "with respect to payments" purportedly made to Plaintiff. The instructions for the Form 1099-MISC clearly state that it must be completed "for each person to whom you have <u>paid</u> during the year . . . [a]t least $600 in rents, services, prizes and awards, [and] other income <u>payments</u>." <u>2011 Instructions for Form 1099-MISC</u> ("2011 Instructions"), p. 1, available at http://www.irs.gov/pub/irs-prior/i1099msc--2011.pdf; Internal Revenue Service, <u>2010 Instructions for Form 1099-MISC</u> ("2011 Instructions"), p. 1, available at http://www.irs.gov/pub/irs-prior/i1099msc--2010.pdf (emphasis added).

D.  The Parties Genuinely Dispute Whether the Forms 1099-MISC were Fraudulent

For a return to be "fraudulent," it must be inaccurate–i.e., it must contain some false statement of fact. Cavoto v. Hayes, 106 A.F.T.R.2d 2010-5140, 2010 WL 2679973, at *4 (N.D. Ill. July 1, 2010) (citing Rossman v. Lazarus, 2008 WL 4181195, at *6 (E.D. Va. Sept. 3, 2008)). The parties disagree about whether the Forms 1099-MISC were accurate. Plaintiff argues that the entries in Box 7 of the forms represent payments that were not made. Defendant argues that the entries in Box 7 were correct, because they represent the commissions Plaintiff earned and would have been paid had Plaintiff remained current on fees and fines owed to Lighthouse. Because Plaintiff did not stay current, the commissions were used to set off the debts he allegedly owed Defendant.

Plaintiff has the better argument. The IRS instructions for Form 1099-MISC instruct taxpayers to file the form "for each person to whom you have paid during the year . . . [a]t least $600 in rents, services, prizes and awards, [and] other income payments." Internal Revenue Service, 2011 Instructions, p. 1; 2010 Instructions, p. 1. Filers should "[r]eport on Form 1099-MISC only when payments are made in the course of your trade or business." 2011 Instructions, p. 1; 2010 Instructions, p. 1. "A cancelled debt is not reportable on Form 1099-MISC," and a filer wishing to report a cancelled debt should use Form 1099-C instead. 2011 Instructions, p. 2; 2010 Instructions, p. 2. Box 7 of the 1099-MISC is labeled "Nonemployee Compensation." 2011 Instructions, pp. 5, 6; 2010 Instructions, pp. 5, 6. Here, filers should "[e]nter nonemployee compensation of $600 or more," including "fees, commissions, prizes and awards for services performed as a nonemployee, [and] other forms of compensation for services performed for your trade or business by an individual who is not your employee." 2011 Instructions, p. 6; 2010 Instructions, p. 6.

While the instructions repeatedly use the words "pay," "paid," or "payment(s)" to refer to the information filers must report on the 1099-MISC, they use "earn(ed)" or "earning(s)" only a handful of times, mostly in discussions of nonqualified deferred compensation plans. Defendant's contention that "[i]f the money is earned, it must be reported to the Internal Revenue Service" (Tr. 44) is therefore, incorrect. "Pay" is typically used to refer to the tendering of money or some other performance or thing of value to discharge an obligation. Cf. Astrue v. Ratliff, 130 S.Ct. 2521, 2526-27 (2010) (contrasting the use of "award" in the Equal Access to Justice Act's fee-shifting provision, which is "the means by which the court confers a right to payment upon the prevailing party," with payment itself).

Defendant has offered no reason—and the Court can discern none—why the IRS used "pay" in anything other than its ordinary sense in the 1099-MISC instructions. Even if "pay" could be construed to encompass forgiveness of debt as substitute for performance of some other duty, context here forecloses any such construction. Among the examples of reportable payments given in the 1099-MISC Instructions is "Commissions paid to nonemployee salespersons that are subject to repayment but not repaid during the calendar year." 2011 Instructions, p. 7; 2010 Instructions, p. 7. Suppose an independent contractor earned and was timely paid $1,000 in commissions in a calendar year. Suppose also that these commissions were conditionally subject to repayment, and that a condition for repayment of $100 is satisfied during the same year. Under the terms of the example, the payor may report all $1,000 on line 7 if the contractor does not repay the $100 within the calendar year. By negative implication, if the contractor does repay the $100, then only the remaining $900 should be reported on line 7.

Now suppose the payor failed to timely pay the commissions before the condition for repayment of $100 occurred. Suppose also that the payor simply pays the contractor $900 and withholds the last $100 to eliminate the repayment obligation. The payor and the contractor are in exactly the same position (setting aside the cost of delay) as in the first example, and it seems unlikely that the IRS intended for the payor to file a substantively different Form 1099-MISC. But if "payment" is interpreted to include setting off one obligation against another, then the payor would be justified in reporting $1,000 on line 7.

A recent Tax Court ruling confirms the Court's interpretation of the Form 1099-MISC instructions. In <u>McAllister v. Commissioner of Internal Revenue</u>, 2013 T.C. Memo 96 (2013), a creditor (who was also the petitioner's employer) "improperly" reported a forgiven debt on a Form 1099-MISC. <u>Id.</u> at *6. In a footnote, the court observed that "[t]he proper form to issue when cancelling a debt is a Form 1099-C, Cancellation of Debt." <u>Id.</u> at *6 n. 1. If Lighthouse's decision to set the unpaid commissions off against outstanding debt was reportable at all,[8] it was reportable on Form 1099-C, not Form 1099-MISC.

By filing the Forms 1099-MISC, Defendant represented making payments to Plaintiff of $6,004.38 in 2010 and $4,500 in 2011. But, except for $1,949.38 in 2010, Defendant never paid Plaintiff any money; instead he "applied [it] to an enormous amount

_____

[8] It is not clear whether a creditor that sets off all or part of a debt owed by another by withholding payments owed to the debtor may report the debt as "cancelled" on a form 1099-C. On Line 2 of the Form 1099-C, "Amount of Debt Discharged," a creditor may not include "any amount the lender receives in satisfaction of the debt by means of a settlement agreement, foreclosure sale, etc." Internal Revenue Service, <u>2011 Instructions for Forms 1099-A and 1099-C</u>, p. 4, available at http://www.irs.gov/pub/irs-prior/i1099ac--2011.pdf; Internal Revenue Service, <u>2010 Instructions for Forms 1099-A and 1099-C</u>, p. 4, available at http://www.irs.gov/pub/irs-prior/i1099ac--2010.pdf. A creditor who withholds payments to a debtor to set off a debt has, in effect, received satisfaction for the debt up to the amount of the payments withheld.

of expenses [Plaintiff] left the company with." (Tr. 5). The representations of payments to Plaintiff on the Forms 1099-MISC were therefore false.

Mere error, however, is not enough to establish fraud. Cavoto v. Hayes, 2010 WL 2679973, at *4 (citing Jacobs v. Ocwen Fed. Bank, FSB, 311 F. Supp. 2d 766, 769 (N.D. Ind. 2004)). Plaintiff must also prove fraudulent intent. "As a general matter, tax fraud requires 'intentional wrongdoing,' and essential to that intent is 'some element of concealment or deception.'" Cavoto, 2010 WL 2679973, at *4 (quoting Granado v. Comm'r of Internal Revenue, 792 F.2d 91, 92-93 (7th Cir. 1986); Zell v. Comm'r of Internal Revenue, 763 F.2d 1139, 1144 (10th Cir. 1985)). In other words, Plaintiff must prove that the defendant knew the information reported was false but reported it anyway in order to deceive the IRS or harass the plaintiff. H.R. Rep. No. 104-506, at 35; Rossman, 2008 WL 4181195, at *6 (plaintiff must prove "deceitfulness or bad faith" to state a claim under § 7434). Accord Cavoto, 2010 WL 2679973, at *4; Pitcher, 2012 WL 5269060 at *9.

Plaintiff's motion and accompanying affidavit say nothing about Defendant's intent, instead focusing strictly on the falsity of the 1099's. (Doc. 39). His complaint alleges that the returns were "fraudulent" and that "Defendant has committed fraud," (Doc. 1, ¶¶ 11, 15, 16), but he never states that Defendant intended to deceive the IRS in order to reduce Lighthouse's tax liability or to harass Plaintiff. The introduction to the complaint states that "Defendant's fraudulent actions violate the duty of care the Plaintiff is due as an [i]ndependent [c]ontractor." (Doc. 1, ¶ 1). This suggests negligence, perhaps even recklessness, but not fraud. All the Court can find in the record that hints at why the returns were fraudulent, as opposed to merely false, is an Information Referral (Form 3949 A) that Plaintiff filed with the IRS concerning the 2011 Form 1099-MISC. In that

document, in a section entitled "Comments," Plaintiff wrote, "It seems that they are using the US Tax Codes to get back at me for filing two small claim cases against them in Seminole County Court in Florida." (Doc. 1-2, p. 7). When the Court asked Plaintiff at the hearing what he thought Defendant's motive was for filing the returns, Plaintiff responded that he couldn't understand why Defendant was treating him "viciously and unfairly" despite Plaintiff's loyalty to the company. (Tr. 20-21).

This evidence is thin, but it is enough to survive summary judgment on the question of intent. "As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." Chanel, Inc. v. Italian Activewear of Fla., 931 F.2d 1472, 1476 (11th Cir. 1991). See also Harlow v. Fitzgerald, 457 U.S. 800, 816 (1982) (observing that "questions of subjective intent" can only "rarely be decided by summary judgment"). There is ample evidence in the record that the relationship between the parties became increasingly acrimonious in 2010 and 2011. (See, e.g., Docs. 67-5, 67-6, 67-7 (aggressive and inflammatory letters between the parties' attorneys)). The trier of fact could reasonably conclude on this record that Defendant knew the information reported on the Forms 1099-MISC was false and that he filed the forms anyway to harass or injure Plaintiff.

E. Willfulness

Proving that a fraudulent or otherwise culpable act was done "willfully" in the context of federal tax laws requires showing "'a voluntary, intentional violation of a legal duty.'" Cheek v. United States, 498 U.S. 192, 200, 201 (1991) (quoting United States v. Bishop, 412 U.S. 346, 360 (1973)). A good faith belief that one's method of reporting information to the IRS is lawful prevents a finding of willfulness, even if that belief is objectively unreasonable. United States v. Collins, 920 F.2d 619, 622-23 (10th Cir.

1990). Good-faith reliance on professional advice is a defense in a tax case where the government or private plaintiff must prove willfulness. United States v. Bishop, 291 F.3d 1100, 1106-07 (9th Cir. 2002). To raise this defense, Defendant must show that he completely disclosed all relevant facts to the professional on whose advice he relied. United States v. Meyer, 808 F.2d 1304, 1306 (8th Cir. 1987).

At the hearing, Defendant stated that he relied on the advice of his accountant regarding what information he should report on Lighthouse's Forms 1099-MISC. (Tr. 35). Plaintiff said he did not believe that, and has submitted emails he exchanged with Defendant that he says contradict Defendant's version of events. (Tr. 36). This disagreement regarding Defendant's state of mind at the time he filed the returns is not one the Court can resolve at the summary judgment stage. See Chanel, 931 F.2d at 1476.

## Conclusion

Plaintiff has shown, and the Court finds that: (1) Defendant filed the Forms 1099-MISC for 2010 and 2011 (albeit on behalf of Lighthouse); (2) the Forms 1099-MISC are information returns with respect to payments purported to be made to Plaintiff; and (3) the 2010 Form 1099-MISC overstated payments to Plaintiff by $4,055 and the 2011 Form 1099-MISC falsely indicated $4,500 in payments to Plaintiff. However, genuine disputes of material fact exist concerning whether Defendant filed the returns with fraudulent intent. Because disputed issues of material fact preclude summary judgment for either party, the Court **DENIES** Plaintiff's Motion for Summary Judgment (Doc. 39) and Defendant's Motion to Dismiss (Doc. 40).

**DONE** and **ORDERED** in Orlando, Florida on December 11, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties