UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PETUR M. SIGURDSSON     CIVIL ACTION # 6:12-cv-920-Orl-19-TBS
    Plaintiff

Vs.

ERNESTO DICARLANTONIO
    Defendant
_____/

## DEFENDANT'S TRIAL BRIEF

Defendant hereby submits the following trial brief.

### PRELIMINARY STATEMENT

1. Plaintiff, Petur M. Sigurdsson (hereafter "Plaintiff" or "Sigurdsson"), filed this civil action under 26 U.S.C. § 7434(a) alleging that the Defendant, Ernesto DiCarlantonio (hereafter "Defendant" or "DiCarlantonio") filed fraudulent Information Returns to the IRS for the years 2010 and 2011.

2. The action is for statutory damages in the amount of $5000 for each of 2010 and 2011.

3. Plaintiff filed his complaint on or about June 19, 2012.

4. Defendant asserts that while acting as an agent of the non-party corporation, Lighthouse Properties of America, Inc., which had contracted with the Plaintiff, the Information Returns were filed and were done so correctly under the guidance and direction of the corporation's accountant. Therefore, Defendant asserts that he is not liable for statutory damages. Defendant filed the returns with a good faith basis and at the instruction of the corporation's accountant.

### RELEVANT FACTS

Lighthouse Properties of America, Inc. (hereafter "LHPA") was a Florida corporation established in May, 2002. The sole owner and shareholder was Fernanda

1

DiCarlantonio, the Defendant's mother. The Defendant was the Broker of Record for the corporation, and as required by the Department of Business and Professional Regulation, was also an officer of the corporation holding the position as Secretary. The Defendant addressed the daily activities of LHPA, and was put in this position with the intent of growing the company. The concept of the company, LHPA, was to give agents a company that had the ability to act as a real estate broker in which to associate the various real estate sales agents' licenses allowing agents to conduct Real Estate sales transactions through LHPA's name. The agents paid a monthly fee along with additional expenses for miscellaneous services and in return would receive 100% of their commissions earned. The agents worked as Independent Contractors and their earnings were reported to the Internal Revenue Service (IRS) annually with a 1099 Misc. Informational Return.

The terms of the agents' agreement with LHPA were governed by an Independent Contractor's Agreement and Office Policies and Procedures Manual, which was adjusted from time to time to address the changing needs of LHPA. Agents were free to leave the company at any time and would receive all of their compensation so long as they were current on their expenses and had all supporting documentation for contracts and listings submitted on time, as provided in the Independent Contractor's Agreement and Office Policy and Procedures Manual.

The Plaintiff entered into an agreement with LHPA to work as an Independent Contractor on June 7th, 2006, after a self-proclaimed fallout with his previous broker of record for Century 21, and stayed with LHPA until April 2010. Due to a downturn in the economy, LHPA moved its physical office location in Altamonte Springs, Florida to a "virtual" office in the Defendant's home in Casselberry in August, 2007. All of the same services were provided with the exception of a conference room to meet customers. Many of the agents at that time either got out of the business or moved to another office

location. The Plaintiff was given the opportunity to do the same but chose to stay with LHPA and pay the same monthly fee and other expenses as originally agreed upon.

After the relocation to a virtual office, Plaintiff continued to follow LHPA's policies and procedures. However, this began to change in the summer of 2009. The Plaintiff began to ignore his obligations to turn in documents on time, and started having difficulty making his monthly fee payments. LHPA tried to work with Plaintiff, but Sigurdsson became more defiant. In September 2009, more than two years after LHPA went to a virtual office, the Plaintiff approached LHPA complaining that he was not happy with the services and did not want to pay any fees to stay there. LHPA gave him the opportunity once again to move to another company, but the Plaintiff refused.

With empathy, LHPA offered to work with Sigurdsson on the monthly fee for a few months to help him out as the Plaintiff complained about financial strain. The Plaintiff responded by ignoring the payment of bills owed to LHPA and not turning in required paperwork. At the time this problem was developing, Seminole County put out a request for bids to the Neighborhood Stabilization Program (hereafter "NSP"). During the NSP bidding phase, the Plaintiff approached the Defendant with the Plaintiff's partner builder.

Sigurdsson requested that LHPA fund the Bonding for this project, along with supplying the $300,000 line of credit that was needed for the bidding process. Plaintiff's builder partner advised that he did not have the bond or the line of credit to allow for an NSP bid. LHPA explained to Sigurdsson that the company was not in a financial position to fund the request. Shortly after this request, a large Builder, Ruby Builders, Inc. (hereafter "Builder") a multi generational company in business over 50 years, approached the Defendant to act as the Builder's Realtor for the same program. The Builder had all of the credentials and financial resources. The Builder was only missing a Realtor. The Defendant did agree to act as the Realtor. As a result, the Builder was

awarded one of the contracts. It became obvious that Plaintiff learned of the LHPA-Builder NSP contract. The Plaintiff was not happy with this development in light of Plaintiff's efforts to secure a NSP bid.

In April, 2010, Plaintiff advised that he was leaving LHPA to open up his own Real Estate Brokerage entity. LHPA wished him well. LHPA requested that Sigurdsson make sure that all of the required documents were turned in immediately. As LHPA reviewed Plaintiff's files, LHPA learned that Plaintiff's files were missing over fifty (50) documents from approximately twenty-seven (27) files. LHPA notified Plaintiff of the deficiency. LHPA asked Sigurdsson to produce the missing documents. Plaintiff refused. LHPA reached out to the Plaintiff with a second request reminding Sigurdsson of the policies for not turning in the required paperwork. The request fell on deaf ears.

After the Plaintiff ended his relationship with LHPA, Sigurdsson had several real estate transactions pending to close. On May 6, 2010, Plaintiff closed on Lark's Nest Court through Brian Loe, Attorney, acting as a closing agent. Mr. Loe forwarded the commission checks to LHPA. Mr. Loe began contacting LHPA wanting to know where the commission check was for the Plaintiff. LHPA communicated with Mr. Loe that it was missing a large number of documents that were the property of LHPA from the Plaintiff. LHPA advised that it needed the missing documentation before it could release a check. Through Mr. Loe, Plaintiff advised that a CD allegedly containing the missing documents was available, but that Sigurdsson would not turn it over until a check was given to Plaintiff. LHPA advised that the documents were the property of LHPA. LHPA insisted that documents be turned over.

Thereafter, Plaintiff participated in a second closing on Peterson Place, but once again, refused to turn over any documents, including the HUD-1 settlement statement, or the proceeds check. Sigurdsson concealed the location of this closing. LHPA was without knowledge as to the amount and location of the commission check. LHPA

retained the Kubiki Draper Law Firm to attempt to obtain LHPA property, the documents that Plaintiff withheld. In June, 2010, Mr. Loe provided the CD with Plaintiff's documents to LHPA. Upon receipt, LHPA discovered that many of the required documents were not included. Many of the documents provided were illegible or incomplete. LHPA notified Plaintiff's counsel, Mr. Loe, as to the deficiencies. Plaintiff did not supplement the incomplete production of documents.

On February 4, 2011, the Plaintiff sued LHPA in Seminole County Court for the commission earned for the Lark's Nest Court transaction in the amount of $4,055. LHPA counter-sued based upon the outstanding accruing balance of fees owed to LHPA as well as the missing documents that were property of LHPA. The Court ruled in favor of Plaintiff finding that Sigurdsson earned the commission. Though the Court ruled against LHPA and felt that a particular invoice with fines was not warranted, (Invoice #70), it never did speak to the additional expenses that were in effect as well as other expenses that were accruing.

On May 19, 2011, Plaintiff sued LHPA in Seminole County Court to recover $4,500 in commission earned for the closing of Peterson Place. On June 13, 2013 the Court entered judgment for the Plaintiff in the amount of $4850.

In January 2012, the LHPA President decided the company was no longer viable. LHPA instructed Defendant to close down operations. LHPA advised its sales agents to transfer real estate licenses from LHPA to another broker before the end of January, 2012. DBPR was notified on or about February 7, 2012 that LHPA had closed its business operations.

Plaintiff attempted to collect the judgments from LHPA. LHPA cooperated in supplying required documents in the Fact Information Request Sheet. Unfortunately, LHPA was no longer in business. LHPA did not possess assets for payment of the judgments.

Plaintiff turned his attention to the Defendant in this proceeding. It is interesting to note that the amount sought in this proceeding is very nearly the amount Sigurdsson attempted to collect in the state court proceedings from LHPA.

Plaintiff also filed a complaint with the Florida Real Estate Commission (hereafter "FREC") on November 20, 2012 against the Defendant personally for the commissions earned and owed to him by LHPA. On August 23, 2013 the FREC Probable Cause Panel determined that the facts and circumstances surrounding the case did not warrant commencement of formal administrative action against the Defendant. That case was dismissed.

Defendant, acting as an agent of LHPA, filed the 1099 Misc. Information Returns with the IRS for earnings of each Independent Contractor for the appropriate year. In so doing, DiCarlantonio would simply tally the agents' gross commissions earned from sales. Defendant discussed earnings with LHPA's accountant. At the accountant's direction, DiCarlantonio would prepare the Informational Returns.

In June and July, 2009 the Plaintiff did not pay monthly fees of $350/month to LHPA. Sigurdsson requested that LHPA reduce his commission on the closing of 441 Wayman by the amount owed. The reduction was completed. At the end of the year, the amount reported on the Informational Return equaled the full commission even though Plaintiff did not receive the amount reported. Sigurdsson did not file a complaint with the IRS regarding the 2009 Return. He did not notify LHPA regarding any concern with this variance between what was received and what was earned.

In 2010, as an Independent Contractor with LHPA, the Plaintiff closed three (3) transactions to LHPA's knowledge. One, 2290 San Vital which earned the Plaintiff $1949.38 in commission. Two, Lark's Nest Court which earned the Plaintiff $4,055. Three, Peterson Place, of which LHPA had no data on the amount of commission earned. Plaintiff withheld information from LHPA, including the location and amounts

received at the closing. LHPA learned of the closing in May, 2011. As a result, in January, 2011, Defendant acting as agent of LHPA, reviewed the earnings. DiCarlantonio filed the 1099 Misc. Informational Return in the amount of $6,004.38, reflecting the amounts known to Defendant at the time of filing. Plaintiff did not contact LHPA or the Defendant to dispute or complain about the amount filed on the Informational Return for 2010 earnings.

LHPA did not learn of the amount of commissions earned for the closing of 1880 Peterson Place. The transaction closed on May 20, 2010, but LHPA learned of the closing on May 21, 2011, a full year later. The closing was discovered when Sigurdsson sued LHPA for the commissions on a property that was not turned in to LHPA. LHPA did eventually receive the funds. The funds were applied to the Plaintiff's outstanding balance owed to LHPA. As LHPA received the funds in 2011, LHPA had to report it as earned in 2011 on the Informational Returns sent to the Plaintiff for that year. At no time did Plaintiff dispute or complain about the 2011 Informational Return to LHPA or Defendant directly.

## THE LAW OF THE CASE

### A. Prior Findings of Fact

Within the Order issued December 11, 2013 the analysis states in part:

"Section 7434(a) provides:

If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.

To recover under this statute, Plaintiff must prove: (1) the filing in question was an information return; (2) the defendant filed the return; (3) the return was with respect to payments purported to be made to the plaintiff; (4) the information return was fraudulent; and (5) the defendant filed the fraudulent return willfully. Plaintiff must prove the last two elements by clear and convincing evidence. *Cavoto v. Hayes*, 106 A.F.T.R.2d 2010-5140, 2010 WL 2679973, at *4 (N.D. Ill. July 1, 2010).

    A. The Form 1099-MISCs were 'Information Returns'

Section 7434(f) expressly defines 'information return' as 'any statement described in section 6724(d)(1)(A).' Section 6724(d)(1)(A)(i) includes 'any statement of the amount of payments to another person required by (a) section 6041(a) or (b)' in the definition of 'information return.' Section 6041(a), in turn, requires reporting of wages paid to employees and non-employee income paid to independent contractors. Nonemployee income must be reported in Box 7 of IRS Form 1099-Misc. The forms in this case are Forms 1099-Misc reporting nonemployee compensation payments "purported to be made to" Plaintiff. The Court therefore finds that there is no genuine dispute and this element has been established.

    B. Defendant "Filed" the Forms 1099-MISC

    C. The Forms 1099-MISC Were 'With Respect to Payments' made to Plaintiff.

The Court found that there was no genuine dispute that the Forms 1099-MISC were 'with respect to payments' purportedly made to Plaintiff.

    D. The Parties Genuinely Dispute Whether the Forms 1099-MISC were Fraudulent

For a return to be "fraudulent," it must be inaccurate—i.e., it must contain some false statement of fact. *Cavoto v. Hayes*, 106 A.F.T.R.2d 2010-5140, 2010 WL 2679973, at *4 (N.D. Ill. July 1, 2010) (citing *Rossman v. Lazarus*, 2008 WL 4181195, at *6 (E.D. Va. Sept. 3, 2008)).The parties disagree about whether the Forms 1099-MISC were accurate. Plaintiff argues that the entries in Box 7 of the forms represent payments that were not made. Defendant argues that the entries in Box 7 were correct, because they represent the commissions Plaintiff earned and would have been paid had Plaintiff remained current on fees and fines owed to Lighthouse. Because Plaintiff did not stay current, the commissions were used to set off the debts he allegedly owed Defendant.

Plaintiff has the better argument....

Now suppose the payor failed to timely pay the commissions before the condition for repayment of $100 occurred. Suppose also that the payor simply pays the contractor $900 and withholds the last $100 to eliminate the repayment obligation. The payor and the contractor are in exactly the same position (setting aside the cost of delay) as in the first example, and it seems unlikely that the IRS intended for the payor to file a substantively different Form 1099-MISC. But if "payment" is interpreted to include setting off one obligation against another, then the payor would be justified in reporting $1,000 on line 7.
A recent Tax Court ruling confirms the Court's interpretation of the Form 1099-MISC instructions. In *McAllister v. Commissioner of Internal Revenue*, 2013 T.C. Memo 96 (2013), a creditor (who was also the petitioner's employer) "improperly" reported a forgiven debt on a Form 1099-MISC. Id. at *6. In a footnote, the court observed that "[t]he proper form to issue when cancelling a debt is a Form 1099-C, Cancellation of Debt." Id. at *6 n. 1. If Lighthouse's decision to set the unpaid commissions off against outstanding debt was reportable at all,8 it was reportable on Form 1099-C, not Form 1099-MISC.

...The representations of payments to Plaintiff on the Forms 1099-MISC were therefore false.

Mere error, however, is not enough to establish fraud. *Cavoto v. Hayes*, 2010 WL 2679973, at *4 (citing *Jacobs v. Ocwen Fed. Bank, FSB*, 311 F. Supp. 2d 766, 769 (N.D. Ind. 2004)). Plaintiff must also prove fraudulent intent. 'As a general matter, tax fraud requires 'intentional wrongdoing,' and essential to that intent is 'some element of concealment or deception.'" *Cavoto*, 2010 WL 2679973, at *4 (quoting *Granado v. Comm'r of Internal Revenue*, 792 F.2d 91, 92–93 (7th Cir. 1986); *Zell v. Comm'r of Internal Revenue*, 763 F.2d 1139, 1144 (10th Cir. 1985)). In other words, Plaintiff must prove that the defendant knew the information reported was false but reported it anyway in order to deceive the IRS or harass the plaintiff. H.R. Rep. No. 104-506, at 35; *Rossman*, 2008 WL 4181195, at *6 (plaintiff must prove 'deceitfulness or bad faith' to state a claim under § 7434). Accord *Cavoto*, 2010 WL 2679973, at *4; *Pitcher*, 2012 WL 5269060 at *9.

Plaintiff's motion and accompanying affidavit say nothing about Defendant's intent, instead focusing strictly on the falsity of the 1099's. (Doc. 39). ... 'As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial.' *Chanel, Inc. v. Italian Activewear of Fla.*, 931 F.2d 1472, 1476 (11th Cir. 1991). ...

### E. Willfulness

Proving that a fraudulent or otherwise culpable act was done "willfully" in the context of federal tax laws requires showing 'a voluntary, intentional violation of a legal duty.' *Cheek v. United States*, 498 U.S. 192, 200, 201 (1991) (quoting *United States v. Bishop*, 412 U.S. 346, 360 (1973)). A good faith belief that one's method of reporting information to the IRS is lawful prevents a finding of willfulness, even if that belief is objectively unreasonable. *United States v. Collins*, 920 F.2d 619, 622–23 (10th Cir.1990). Good-faith reliance on professional advice is a defense in a tax case where the government or private plaintiff must prove willfulness. *United States v. Bishop*, 291 F.3d 1100, 1106–07 (9th Cir. 2002). To raise this defense, Defendant must show that he completely disclosed all relevant facts to the professional on whose advice he relied. *United States v. Meyer*, 808 F.2d 1304, 1306 (8th Cir. 1987)...."

### B. Outstanding Issues

1. Whether the Defendant knew the information reported on the Forms 1099-MISC was false and whether Defendant filed the forms anyway to harass or injure Plaintiff.

2. Whether Plaintiff can prove that a fraudulent or otherwise culpable act was done "willfully" in the context of federal tax laws.

3. Whether Defendant had a good faith belief that his method of reporting information to the IRS was lawful.

4. Whether Defendant relied, in good faith, on professional advice which avoids liability in a tax case.

### ARGUMENT

**1. Defendant was not aware that the Forms 1099 Misc. Informational Return were false. Defendant did not file to harass or injure the Plaintiff.**

The Evidence will show that the Plaintiff's earned income reported by Defendant for LHPA was not intentionally false. The Independent Contractor's Agreement and Policies and Procedures Manual outline the method in which the earnings will be disbursed. Expenses born by the agent are paid by the agent to the Broker, LHPA, prior to the Agent receiving commission earnings. However, the agent may, by the terms of the agreement, allow the Broker to deduct monies owed to the Broker from earnings instead of physically cutting a check to the Broker for the agent's expenses. Though this method can be considered offsetting a debt, it is not considered a cancellation of debt creating the need for a 1099C to file the return.

The Court, in its summary judgment analysis, suggests by example that:

"Suppose an independent contractor earned and was timely paid $1,000 in commissions in a calendar year. Suppose also that these commissions were conditionally subject to repayment, and that a condition for repayment of $100 is satisfied during the same year. Under the terms of the example, the payor may report all $1,000 on line 7 if the contractor does not repay the $100 within the calendar year. By negative implication, if the contractor does repay the $100, then only the remaining $900 should be reported on line 7.
Now suppose the payor failed to timely pay the commissions before the condition for repayment of $100 occurred. Suppose also that the payor simply pays the contractor $900 and withholds the last $100 to eliminate the repayment obligation. The payor and the contractor are in exactly the same position (setting aside the cost of delay) as in the first example, and it seems unlikely that the IRS intended for the payor to file a substantively different Form 1099-MISC. But if 'payment' is interpreted to include setting off one obligation against another, then the payor would be justified in reporting $1,000 on line 7."

Defendant respectfully disagrees with the Court's finding that the Informational Return was false and submits this argument to preserve his objection for the record. Defendant asserts that the last sentence of the Court's findings is consistent with Defendant's position that he did not file the returns in bad faith or to harass or injure the Plaintiff. The commissions earned were subject to offset by the amounts owed to LHPA. The agent, in agreeing to the terms of the Independent Contractor's Agreement, understood that any expenses due to LHPA from the agreement are independent of the

10

income earned. If the agent works the entire year and never earns a commission, the agent will owe the expenses associated with the agreement. Expenses that the agent incurs, whether through the LHPA Agreement or through another source, such as an Office Depot purchase, are business expenses that are likely deductible items available to reduce the agent's tax liability. Therefore, in the last line of the Court's example, Defendant asserts that the most accurate statement applicable to this case is found:

> "But if 'payment' is interpreted to include setting off one obligation against another, then the payor would be justified in reporting $1,000 on line 7."

This is further buttressed in case law the Court provided. In *McAllister v. Commissioner of Internal Revenue*, 2013 T.C. Memo 96 (2013), the findings state in part:

> "In 2005 McAllister worked as an employee for Suncoast Roofers Supply. During this time he borrowed money from Suncoast Roofers Supply. The total amount borrowed was 78,849.07. Suncoast Roofers and McAllister executed a promissory note for each of the advances. Pursuant to the loan arrangements, McAllister was to repay the loans from bonuses earned through incentive plans as part of his compensation. Suncoast Roofers agreed to pay McAllister the amounts of any tax liabilities from the earning of bonuses. The loans had no repayment date and required no interest payments. McAllister made no repayments of the loans."

Further, in McAllister, the following is found:

> "The Form 1099-MISC improperly classified the amount of the forgiven debt as nonemployee compensation income of $78,849.07. We find this was a bookkeeping error rather than a reflection that McAllister had been awarded a bonus."

In the *McAllister* case, the employer, in filing the Form 1099-MISC, treated the employee as if he was provided a bonus or other income that equaled the amount of the loan that was never repaid. In that case, the Tax Court suggested that a 1099-C was the appropriate form to use to report the forgiveness of the loan, but did not find that the employer did anything improper with its use of the 1099 Misc Information Return. In the instant action, there was no promissory note between the Agent and LHPA, but moneys were owed to LHPA pursuant to the agreement of the parties. There were expenses billed to the agent that were expected to be paid whether or not a commission was

11

earned. Defendant asserts that the setting off of income earned to satisfy a separate obligation permitted the Defendant to report the commission income earned on a 1099 Misc. Information Return. The return was not filed to harass or injure the Plaintiff.

The Plaintiff received statements that itemized expenses due to LHPA. To Defendant's knowledge, Plaintiff was within his rights to report the LHPA cost items as business expenses which would reduce income of Plaintiff. The tax liability would equal what it would have been had no Informational Return been submitted. Consider the following:

Plaintiff earns $10,000 in commission income. Plaintiff accrues $5000 in business expenses as part of his expenses to do business. He would then deduct the amount of his expenses from his earned commissions and report the net amount as taxable income. If he received a 1099 Misc return showing income of $10,000, he would simply attach his expenses of $5000 to his return creating a tax liability of $5000 earned income. If he receives a 1099 Misc. return showing $5000 in paid income and no expenses attached to it, then he would still report the $5000 as earned income.

Keep in mind that the Plaintiff never notified the Broker or the Defendant that he felt there was a discrepancy in what was reported on the 1099 Misc return for either 2010 or 2011. Yet, he filed an informational complaint with the IRS about his concerns, then immediately followed up with this suit in an effort to receive compensation for what he considered "filing a fraudulent return". Defendant was not aware that the information reported on the Forms 1099-MISC was false. Defendant did not file the forms to harass or injure Plaintiff. It appears that Plaintiff has filed this claim as a substitute method to collect commissions without paying expenses of LHPA when Plaintiff discovered that he would not be able to collect on the judgment awarded to him in Seminole County Court.

**2. Plaintiff cannot prove that a fraudulent or otherwise culpable act was done "willfully" in the context of federal tax laws.**

The Plaintiff has not offered the Court any evidence that the Defendant has purposefully reported the 1099 Misc. Returns with the willful intent to cause harm or harass the Plaintiff. In its recent ruling, the Court stated, in part:

"All the Court can find in the record that hints at why the returns were fraudulent, as opposed to merely false, is an Information Referral (Form 3949 A) that Plaintiff filed with the IRS concerning the 2011 Form 1099-MISC. In that document, in a section entitled "Comments," Plaintiff wrote, "It seems that they are using the US Tax Codes to get back at me for filing two small claim cases against them in Seminole County Court in Florida." (Doc. 1-2, p. 7). When the Court asked Plaintiff at the hearing what he thought Defendant's motive was for filing the returns, Plaintiff responded that he couldn't understand why Defendant was treating him "viciously and unfairly" despite Plaintiff's loyalty to the company. (Tr. 20–21)."

The burden at trial is upon the Plaintiff to establish that Defendant acted with willful intent. The Plaintiff will not be able to show willfulness. Defendant filed the Informational Return based on a good faith belief that the information included in the MISC-1099 was accurate. Defendant filed the return on the advice of a professional.

### 3. Defendant had a good faith belief that his method of reporting information to the IRS was lawful.

As previously outlined above, Defendant had a good faith belief that his method of reporting was supported by the fact that the Plaintiff would be entitled to offsets of the income by the expense owed to LHPA. Plaintiff simply had to claim his expenses as an offset on his income tax return to avoid additional tax liability. The expenses were owed to LHPA. In its bookkeeping, LHPA offset agent expenses against the amounts that LHPA owed to Plaintiff for commissions. The income was earned subject to the offsets. Defendant, in good faith, reported the commissions as earned income to the Plaintiff.

### 4. Defendant relied upon professional advice in good faith.

The evidence will show that Defendant, while acting in his capacity as an agent of LHPA, relied in good faith upon professional advice regarding the filing 1099 Misc. Informational Returns through the LHPA accounting firm. Furthermore, Plaintiff accepted the method of reporting for prior years without complaint to LHPA or the Defendant.

13

Benjamin Moore of Benjamin Moore, CPA Accounting Firm will corroborate Defendant's testimony. Defendant fully disclosed the circumstances of the obligations that LHPA owed to Plaintiff and that Plaintiff owed to LHPA. Defendant acted at the direction of the LHPA accountant. Accordingly, the Defendant is entitled to the defense that he relied on professional advice with regard to the reporting. The Plaintiff is not entitled to a recovery under the facts and circumstances that will be presented to the Court. Accordingly, at the conclusion of the evidence, Defendant requests that the Court enter a judgment in favor of Defendant and against the Plaintiff.

## EVIDENCE

A. Trial Witnesses

Defendant anticipates calling the following witnesses:

1. Benjamin Moore, CPA

2. Petur Sigurdsson, Plaintiff

The Defendant also anticipates offering into evidence the items as outlined in the pretrial statement, as well as including items submitted by the Plaintiff within the same pretrial statement.

## CONCLUSION

The Defendant will prove through his defense and witnesses that he acted appropriately when filing the 1099 Misc. Returns. Defendant requests that this Court rule in favor of the Defendant and that the Court award Defendant his costs incurred in the defense of this matter and for such other and further relief as this Honorable Court may deem just at the conclusion of the trial.

Respectfully Submitted on May 12, 2014

_____
Ernesto DiCarlantonio
Defendant - Pro Se
341 Misty Oaks Run
Casselberry, Florida 32707
Telephone Number: 407-331-7770
Email Address: Ernesto@HoneyUrHome.com

I, Ernesto DiCarlantonio certify that a true copy of this document has been furnished by U.S.P.S. to Petur Sigurdsson 105 Kaiser Lane, Longwood, Florida 32750 on May 12, 2014

_____
Ernesto DiCarlantonio

15